FILED
2018 Sep-27 AM 09:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DANIEL VOSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:17-cv-01465-SGC |
| | ) |
| STATE FARM MUTUAL AUTOMOBILE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

Presently pending is the motion to dismiss for failure to state a claim filed by the defendant, State Farm Mutual Automobile Insurance Company. (Doc. 2). The motion has been fully briefed and is ripe for adjudication. (*See* Docs. 7, 14). As explained below, the motion is due to be granted in part and denied in part.

**I.   STANDARD OF REVIEW**

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

elements of a cause of action will not do.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted).

To survive a motion to dismiss for failure to state a claim on which relief may be granted brought pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (*quoting Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*citing Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotation marks omitted).

## II.  BACKGROUND

This lawsuit presents a dispute over entitlement to underinsured motorist ("UIM") benefits following a traffic accident in rural Calhoun County, Alabama. The accident occurred on July 30, 2013, as the plaintiff, Daniel Voss, was riding his bicycle southbound in the right-hand lane of Smith Road. (Doc. 1-1 at 13). Donna Smith, a non-party to this lawsuit,[2] was driving northbound on Smith Road. The complaint alleges Smith, who was speeding and talking on her cell phone, crossed the center line and collided with the plaintiff. (*Id.*). The plaintiff was seriously injured and was flown to UAB hospital, where he was diagnosed with fractures to his skull and face, as well as serve, traumatic brain injuries. (*Id.* at 14). The plaintiff was comatose for two weeks and hospitalized for a month, spent two weeks receiving inpatient rehabilitation,

---

[2] Smith has filed a related lawsuit based on the same accident. *Smith v. Nationwide Mut. Ins. Co.*, No. 2:17-1373-SGC (N.D. Ala. *filed* Aug. 15, 2017).

and has undergone at least four brain surgeries. (*Id.*). The complaint alleges the plaintiff has suffered serious and permanent changes to his brain function and incurred over $726,000 in medical expenses. (*Id.* at 15).

In August 2013, the plaintiff's family hired a lawyer who notified Smith's liability insurer, Nationwide, of the accident and the plaintiff's injuries. (Doc. 1-1 at 15). In October 2013, the plaintiff's lawyer made a policy limits demand, notifying Nationwide the medical expenses exceeded $460,000 at that point. (*Id.*). Less than a month later, Nationwide provided proof that Smith's policy provided $25,000 in liability coverage and offered its policy limits. (*Id.*). The plaintiff's counsel notified State Farm—the plaintiff's parents' UIM carrier—of the accident, Nationwide's tender of its $25,000 policy limits, and that a claim for UIM benefits would be forthcoming. (*Id.* at 16).

On December 4, 2013, State Farm's retained counsel responded, expressing State Farm's desire to investigate the accident. (Doc. 1-1 at 16-17).[3] On January 27, 2014, State Farm's counsel conducted an examination under oath ("EUO") of the plaintiff and his parents. (*Id.* at 17). The complaint alleges the plaintiff did not remember the accident and his parents did not witness it. (*Id.* at 17, 22). The complaint further alleges the EUO was State Farm's only investigation into the accident. (*Id.* at 17). On February 6, 2014, State Farm informed the plaintiff—without explaining its rationale—it would not consent to the settlement with Smith, instead fronting Nationwide's policy limits pursuant to the procedures set out in *Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So. 2d 160 (Ala. 1991). (*Id.*)

---

[3] The initial response raised a coverage issue regarding potentially tardy written notice (the policy did not require written notice) of the accident. (Doc. 1-1 at 16-17). It appears this issue was resolved as State Farm ultimately did not contest coverage.

The plaintiff's counsel responded on February 10, 2014, requesting State Farm to reconsider its refusal to consent to the settlement with Smith, stating the plaintiff had no interest in suing Smith or collecting against her directly. (Doc. 1-1 at 18). The letter informed State Farm the plaintiff's medical expenses were over $500,000 and proposed that State Farm simply pay its $100,000 UIM policy limits. (*Id.*). The letter closed by requesting State Farm to either: (1) consent to the settlement with Smith; or (2) attempt to negotiate a settlement regarding the UIM benefits. (*Id.*). On February 18, 2014, State Farm responded and, after again noting the possible coverage issue regarding the delay in notification, stated there was evidence to suggest Smith was not liable and the plaintiff was contributorily negligent. (*Id.* at 19). The letter did not describe any specific evidence supporting the plaintiff's contributory negligence; neither did it respond to the plaintiff's policy limits demand. (*Id.*; *see* Doc. 14-2 at 1-2).

The plaintiff responded on February 25, 2014, noting Nationwide had quickly tendered its limits, claiming evidence at the scene indicated Smith was speeding when she hit the plaintiff, and requesting State Farm to reconsider. (Doc. 1-1 at 20).[4] On February 27, 2014, State Farm's counsel informed the plaintiff that State Farm would stand on its decision to front Nationwide's policy limits. (*Id.* at 21). On April 9, 2014, State Farm sent a check for the $25,000 in fronted funds to be held in trust pending resolution of the plaintiff's claims against Smith. (Doc. 1-1 at 22).

The plaintiff subsequently filed a lawsuit against Smith in state court. *Voss v. Smith*, No. 2014-900224 (Calhoun Cty. Cir. Ct. *filed* April 23, 2014) (*see* Doc. 14-1 at 1-6). The state court

---

[4] The February 18, 2014 letter from State Farm and the plaintiff's February 25, 2014 letter in response are attached to State Farm's reply. (Doc. 14-2). Because these letters are central to the plaintiff's complaint and are undisputed, the court can consider them on a motion to dismiss. Likewise, the court can take judicial notice of the documents from the record in the underlying accident case. (Doc. 14-1).

complaint did not name State Farm, and State Farm did not intervene. (Doc. 1-1 at 22-23). Neither did State Farm pursue subrogation against Smith or monitor the state court lawsuit. (*Id.* at 24). Discovery in the state court case revealed: (1) Smith had a history of speeding in the area of the accident; (2) individuals living near the accident site had repeatedly warned Smith about her dangerous driving in the area, including mere weeks before the accident; (3) Smith's version of events leading up to the accident was not credible; (4) Smith was talking on her cellphone at the time of the accident, a fact she lied about during her deposition; and (5) the plaintiff's medical bills exceeded $726,000. (*Id.* at 24-25). The state court trial proceeded to a $1,900,000 jury verdict against Smith in favor of the plaintiff. (*Id.* at 26).

On September 30, 2016—before the deadline for Smith's post-judgment motions or appeal had run—State Farm sent a check to the plaintiff for the remainder of its UIM coverage limits. (Doc. 1-1 at 26). Smith's counsel subsequently filed post-judgment motions, which were denied; Smith did not appeal. (*Id.*). After Nationwide paid its policy limits, plaintiff was left with a $1,775,000 excess judgment, excluding interest. (*Id.* at 27).

On July 27, 2017, the plaintiff filed the instant complaint against State Farm in the Circuit Court of Calhoun County, asserting claims for bad faith, breach of contract, fraud, and outrage. (Doc. 1-1). State Farm removed to this court on the basis of diversity jurisdiction. (Doc. 1). The complaint alleges financial motives drove State Farm's intentional failure to investigate and fairly evaluate the plaintiff's insurance claim. (Doc. 1-1 at 24). These motives— which apply to both the decision to decline consent to the plaintiff's settlement with Smith and the refusal to pay or settle the plaintiff's UIM claim absent a judgment against Smith—include: (1) avoiding the cost of investigation and litigation; (2) collecting investment income on funds rightfully belonging to the plaintiff; (3) pressuring the plaintiff to settle for less than policy limits

5

by forcing the plaintiff to try his slam-dunk claims against Smith; and (4) maintaining artificially low reserves. (Doc. 1-1 at 28-29). The complaint further alleges State Farm regularly engages in this conduct in circumstances, like the plaintiff's, where: (1) the claim involves catastrophic injuries; (2) the insured has substantial UIM coverage; and (3) the tortfeasor has minimum limits or limits that are dwarfed by the insured's damages. (Doc. 1-1 at 10-11). The complaint alleges that, rather than pay valid UIM claims, State Farm engages in minimal investigation, forces the tortfeasor to defend cases of clear liability, and hold out on a settlement in hopes that: (1) a jury will find against the insured; (2) the insured will die before securing a judgment; or (3) the insured will be pressured into settling the UIM claim for less than policy limits. (*Id.* at 11-12).

### III. DISCUSSION

Because this is a diversity action, Alabama substantive law governs. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under Alabama's uninsured motorist statute, in order for an insured to be entitled to UIM benefits, the insured must be "legally entitled to recover" from the owner or driver of the underinsured vehicle. ALA. CODE § 32-7-23.[5] The Alabama Supreme Court has recognized the conflicting rights of UIM insureds and their insurers when handling UIM claims. *Lowe v. Nationwide Ins. Co.,* 521 So. 2d 1309 (Ala. 1988). Under *Lowe*, when an insured sues a tortfeasor and also seeks UIM benefits, the insured may either join the UIM insurer as a party or simply notify the UIM insurer of the lawsuit against the tortfeasor and the possibility of a UIM claim following the trial. *Id.* at 1310. Where the insured names the UIM insurer in the lawsuit, the UIM insurer has the option to participate in the litigation or opt-out—choosing not to participate in the trial. *Id.* Where the insured does not name the UIM insurer in

---

[5] Although the policy at issue in this case does not appear on the record, the parties agree it requires the insured to show he is "legally entitled to recover" damages from the tortfeasor. (*See, e.g.*, Doc. 7 at 12).

6

the lawsuit, the insurer can choose to intervene or stay out of the case. *Id.* Under any of these scenarios, the UIM insurer is bound by the liability and damages determinations at trial. *Id.*

In *Lambert*, the Alabama Supreme Court addressed the conflict between a UIM insurer's subrogation rights against the tortfeasor and the UIM insured's right to settle with the tortfeasor. The court held an insured cannot settle a claim against a tortfeasor absent the consent of the UIM insurer. 576 So. 2d at 167. The court also provided the following "general rules" regarding the procedure to be followed by UIM insureds and insurers, noting "any procedure must take into consideration the facts and circumstances of each individual case." *Id.*

> (1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.
>
> (2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.
>
> (3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.
>
> (4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.

(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tortfeasor's insurer.

(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer.

*Id.* In *Lambert*, the court noted these guidelines were designed to protect the UIM insurer in two ways: (1) protecting its subrogation rights against the tortfeasor; and (2) guarding against possible collusion between the UIM insured and tortfeasor at the UIM insurer's expense. *Id.*

Having set out the law generally governing UIM claims, the specific claims and applicable Alabama law are addressed in turn.

### A. <u>Bad Faith</u>

Under Alabama law, liability for bad faith can attach to either an insurer's refusal to pay a claim or its refusal to investigate a claim. *E.g. Chavers v. Nat. Sec. Fire & Cas. Co.*, 405 So. 2d 1, 7 (Ala. 1981) ("An actionable tort arises for an insurer's intentional refusal to settle a direct claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) intentional failure to determine whether or not there was any lawful basis for such refusal."). Regardless of context, a plaintiff claiming bad faith must satisfy the following elements: (1) breach of an insurance contract; (2) refusal to pay a claim; (3) the absence of an arguable reason; and (4) the insurer's knowledge that there was no arguable reason to deny the claim. *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). Where a bad faith claim is premised on failure to investigate, the plaintiff must prove a fifth element: "the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claims." *Id.*

8

The Alabama Supreme Court has recognized the differences between first-party, direct claims and UIM claims:

> Uninsured motorist coverage in Alabama is a hybrid in that it blends the features of both first-party and third-party coverage. The first-party aspect is evident in that the insured makes a claim under his own contract. At the same time, however, third-party liability principles also are operating in that the coverage requires the insured to be "legally entitled" to collect—that is, the insured must be able to establish fault on the part of the uninsured motorist and must be able to prove the extent of the damages to which he or she would be entitled. The question arises: when is a carrier of uninsured motorist coverage under a duty to pay its insured's damages?

*LeFevre v. Westberry*, 590 So. 2d 154, 159 (Ala. 1991). In response to its own query, the court declined to provide a conclusive answer:

> There is no universally definitive answer to this question or to the question when an action alleging bad faith may be maintained for the improper handling of an uninsured or underinsured motorist claim; the answer is, of course, dependent upon the facts of each case. Clearly, there is a covenant of good faith and fair dealing between the insurer and the insured, as with direct insurance, but the insurer and the insured occupy adverse positions until the uninsured motorist's liability is fixed; therefore, there can be no action based on the tort of bad faith based on conduct arising prior to that time, only for subsequent bad faith conduct.

*Id.*

In *LeFevre*, the Alabama Supreme Court set forth guidelines to be used in the UIM context, aiming to protect the conflicting interests of insurers and insureds. As in *Lambert*, the court noted application of the guidelines would have to account for the facts and circumstances of particular cases:

> 1. When a claim is filed by its insured, the uninsured motorist carrier has an obligation to diligently investigate the facts, fairly evaluate the claim, and act promptly and reasonably.
>
> 2. The uninsured motorist carrier should conclude its investigation within a reasonable time and should notify its insured of the action it proposes with regard to the claim for uninsured motorist benefits.

3. Mere delay does not constitute vexatious or unreasonable delay in the investigation of a claim if there is a bona fide dispute on the issue of liability.

4. Likewise, mere delay in payment does not rise to the level of bad faith if there is a bona fide dispute on the issue of damages.

5. If the uninsured motorist carrier refuses to settle with its insured, its refusal to settle must be reasonable.

*LeFevre*, 590 So. 2d at 161 (Ala. 1991) (footnotes omitted).

Here, State Farm's initial motion to dismiss focuses largely on its adherence to the procedure set forth in *Lambert*. (Doc. 2 at 18-20). As State Farm would have it, the tortfeasor's liability was not fixed until the conclusion of the plaintiff's underlying lawsuit. Because State Farm fronted the tortfeasor's (Smith's) policy limits under *Lambert* and then promptly paid the balance of UIM limits once the verdict was entered, it contends the plaintiff cannot state a claim for bad faith. (*Id.* at 18) (citing *Pontius v. State Farm*, 915 So. 2d 557, 561 (Ala. 2005)). The motion also argues that, because the tortfeasor contested liability and asserted a contributory negligence defense, State Farm's actions were proper. (*Id.* at 19). State Farm asserts the plaintiff did not carry his burden to establish the tortfeasor's liability and damages prior to the verdict being returned. (*Id.* at 14-15)(citing *Pontius*, 915 So. 2d at 564).

The briefing clarifies that the plaintiff's bad faith claim is aimed at State Farm's failure to investigate, both in the context of its: (1) refusal to consent to the plaintiff's settlement with the tortfeasor; and (2) failure to promptly pay the UIM claim. The plaintiff sought State Farm's consent to settle with the tortfeasor for her policy limits and simultaneously notified State Farm of a potential UIM claim. The complaint alleges the plaintiff notified State Farm the tortfeasor was liable and was speeding at the time of the accident. The complaint further alleges State Farm's only investigation into the claim consisted of an EUO of the plaintiff and his parents.

The plaintiff alleges that, had State Farm properly investigated the claim, it would have discovered the tortfeasor's clear fault and no contributory negligence by the plaintiff.

On a motion to dismiss, the allegations in the complaint are accepted as true. Regarding the plaintiff's burden to show the tortfeasor's liability,[6] the plaintiff contended the tortfeasor was at fault for the accident and informed State Farm the evidence at the scene indicated the tortfeasor was speeding. The plaintiff also notified State Farm that the plaintiff's liability insurer had offered its policy limits. State Farm's only investigation into the matter was to submit the plaintiff (who was brain damaged and did not remember the accident) and his parents (who did not witness the accident) to an EUO.[7] Accepting these allegations as true, the plaintiff has plausibly alleged State Farm breached its duty to perform a "good faith investigation" under *Lambert*, as well as its obligation to "diligently investigate the facts, fairly evaluate the claim, and act promptly and reasonably" under *LeFevre*. Moreover, the complaint plausibly alleges that State Farm's conclusion the plaintiff was contributorily negligent—exclusively based on the EUO of three individuals who did not witness or remember the accident—was unreasonable.

Next, State Farm relies on the contested liability in the underlying litigation. It is true the tortfeasor's June 4, 2014 answer—consisting of a general denial and seventeen affirmative defenses—did contest liability and assert contributory negligence as a defense. (Doc. 14-1 at 7-10). However, State Farm made its decisions to not pay the UIM claim and not consent to the plaintiff's settlement with the tortfeasor in February 2014. State Farm made these decisions well before the tortfeasor asserted a contributory negligence defense and, indeed, before the plaintiff

---

[6] It appears the plaintiff satisfied his burden to establish fixed damages. When the plaintiff notified State Farm of his potential UIM claim, his medical expenses far exceeded the tortfeasor's liability limits and the UIM policy limits.

[7] It appears the EUOs primarily were aimed at resolving the coverage issue regarding potentially untimely notice. (Doc. 14-2 at 1).

filed the underlying lawsuit. The fact that the tortfeasor eventually contested liability does not preclude a bad faith claim here. "Alabama law is clear that the relevant evidence that should be considered on a bad-faith denial of an insurance policy claim is the evidence that was in front of the insurance company at the time it denied the claim." *Federated Ins. Co. v. Avans Mach. & Tool*, No. 08-0770, 2010 WL 11562079, at *7 (N.D. Ala. *entered* July 26, 2010) (citing *United States Auto Ass'n v. Wade*, 544 So. 2d 906, 915 (Ala. 1989); *Nat'l Sav. Life Ins. Co. v. Dutton*, 419 So. 2d 1357, 1362 (Ala. 1982)). Accepting the complaint's allegations as true, the tortfeasor had not—either formally or informally—contested liability or asserted contributory negligence in February 2014.

Finally, State Farm contends the plaintiff was not entitled to UIM benefits until he secured a judgment against the tortfeasor in the underlying litigation. However, Alabama law does not require an insured to obtain a judgment against the tortfeasor in order to claim UIM benefits or assert a claim for bad faith. *E.g. LeFevre,* 590 So. 2d at 160. Rather, a UIM insured is entitled to benefits once liability and damages are fixed. *Id.* at 159. Because State Farm does not contest that the plaintiff's damages exceeded the UIM policy limits, the issue here is the point at which the tortfeasor's liability was fixed. Based on the allegations in the complaint, the only information State Farm had regarding liability was the plaintiff's contention that the tortfeasor was at fault and was speeding at the time of the accident. Moreover, the complaint alleges a proper investigation would have revealed the accident was entirely the tortfeasor's fault.[8] At this stage of the proceedings, these allegations are sufficient to show that liability was fixed.

---

[8] *Ex parte Allstate Prop. & Cas. Ins. Co.*, 237 So. 3d 199 (Ala. 2017), upon which State Farm relies, does not change the foregoing conclusions. That opinion, which generally reaffirmed the *Lambert* process and held it applies even where the insurer does not pursue subrogation against the tortfeasor, explicitly noted the case did not involve any suggestion the insurer unreasonably withheld consent to settlement. *Id.* at 207 n.2. This is precisely what the plaintiff alleges here.

For the foregoing reasons, the plaintiff has stated a claim for bad faith and State Farm's motion to dismiss this claim is due to be denied.

B. <u>Breach of Contract</u>

State Farm contends the plaintiff cannot state a claim for breach of contract for the same reasons it advanced in regard to the bad faith claim—compliance with *Lambert*—and because the complaint does not allege the plaintiff suffered any damages. (Doc. 2 at 20-23). Because State Farm's motion to dismiss fails as to the bad faith claim, the same arguments fail with regard to breach of contract.

As to damages, State Farm contends that because the plaintiff ultimately received all of the UIM benefits due under the policy, he cannot show damages. (*Id.* at 22-23). As noted in the plaintiff's opposition, among other damages, the complaint alleges State Farm's breach of contract forced him to incur the unnecessary expense of the underlying trial. (Doc. 1-1 at 32; *see* Doc. 7 at 16). The complaint also alleges State Farm's refusal to consent to the settlement with Nationwide denied him access to direly-needed funds rightly belonging to him. (Doc. 1-1 at 22). The complaint can be reasonably inferred to allege the same regarding State Farm's delayed payment of UIM benefits. These allegations regarding the damages flowing from State Farm's failure to promptly pay the UIM claim and consent to settlement with the tortfeasor are sufficient to state a claim for breach of contract.

Accordingly, the motion to dismiss is due to be denied as to the plaintiff's claim for breach of contract.

C. <u>Fraud</u>

Under Alabama law, a plaintiff alleging fraud must show: (1) a misrepresentation of material fact; (2) made with the intent to deceive; (3) the plaintiff's reasonable reliance on the

13

misrepresentation; and (4) damage as a proximate result. *Brushwitzv v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000). Crucially, a party alleging fraud "must present evidence of reasonable reliance on the purported fraud." *AstraZenaca LP v. State*, 41 So. 3d 15, 27 (Ala. 2009) (quotation marks omitted). Where fraud arises in a business transaction, a plaintiff attempting to show reliance must show he or she "believed the representations to be true." *Shades Ridge Holding Co. v. Cobbs Allen & Hall Mortg. Co.*, 390 So. 2d 601, 611 (Ala. 1980).

> If the plaintiff knew that the representations were false or if he was already in possession of knowledge and facts which the defendant fraudulently attempted to conceal, he cannot complain that he has been misled to his damage by the defendant's attempted deception. A reliance upon the representations of another person in respect to any fact necessarily implies a belief in the truth of the statement thus made. The idea of a person knowing a representation to be false and at the same time relying thereon is a contradiction in terms.

*Id.* at 610-11 (quotation marks omitted) (quoting HARPER & JAMES, THE LAW OF TORTS, § 7.13 (1956).

As argued by State Farm, to the extent the plaintiff's fraud claim is aimed at State Farm's contention that liability was contested, the complaint does not allege the plaintiff believed the statement. Indeed, the complaint alleges liability was clear and that the plaintiff never wavered from this belief. Accordingly, the plaintiff cannot show reliance on State Farm's statements, which he knew to be false.

In his opposition, the plaintiff asserts the fraud claim is directed at State Farm's misrepresentation that it conducted an investigation. (Doc. 7 at 17). However, State Farm's duty to perform an investigation arose solely due to its contractual relationship with the plaintiff. As State Farm argues: (1) "mere failure to perform a contractual promise does not constitute fraud"; and (2) "to assert a fraud claim that stems from the same general facts as one's breach-of-contract claim, the fraud claim must be based on representations independent from the promises in the

contract and must independently satisfy the elements of fraud." *Stone v. Koch Farms of Gadsden, LLC,* No. 12-3777-RBP, 2013 WL 121477, at *2–3 (N.D. Ala. Jan. 8, 2013) (emphasis omitted); (*see* Doc. 2 at 26).

Here, the plaintiff's explanation of his fraud claim reveals it is inextricably linked to the promises made in the insurance contract. This does not give rise to liability for fraud under Alabama law. *See Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 11 (Ala. 2004) (Houston, J., concurring); *Townson v. Koch Farms, LLC*, 2014 WL 1618376, at *2 (N.D. Ala. Apr. 22, 2014); *Holmes v. Behr Process Corp.*, No. 2:15-CV-0454-WMA, 2015 WL 7252662, at *3 (N.D. Ala. Nov. 17, 2015). State Farm's alleged contractual breach has already been transformed into one tort: bad faith. The same conduct cannot be pressed into triple duty by giving rise to a second tort claim for fraud. *See Stone*, 2013 WL 121477, at *3;

For the foregoing reasons, the plaintiff's fraud claim is due to be dismissed.

### D. **Outrage**

A plaintiff pleading outrage must allege the defendant's conduct: "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). The conduct complained of must "be so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id.*

The Alabama Supreme Court has recognized the tort of outrage for conduct including: "(1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So.2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So.2d 133 (Ala. 1983); and (3) egregious sexual harassment, *Busby v. Truswal*

*Sys. Corp.*, 551 So.2d 322 (Ala. 1989)." *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, No. 1160654, --- So. 3d ---, 2017 WL 6397654, at *3 (Ala. Dec. 15, 2017). Additionally, the Alabama Supreme Court has affirmed a judgment for outrage "against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began" trading addictive controlled substances for sex, leading to the boy becoming an addict. *Id.* (quoting *Little v. Robinson*, 72 So. 3d 1168, 1173 (Ala. 2011)). However, the Alabama Supreme Court has held that liability for outrage is not limited to these circumstances. *See id.* (quoting *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000)).

At least one court sitting in this district has held "certain conduct involving poorly handled insurance claims may fit within Alabama's outrage tort." *Johnson v. Safeway Ins. Co.*, No. 2012 WL 4733293, at *3 (N.D. Ala. *entered* Sept. 27, 2012) (granting motion to remand and finding no fraudulent joinder where complaint included potentially viable outrage claim against non-diverse adjuster who rejected policy limits demand). Here, the complaint alleges State Farm intentionally conducted a cursory investigation into the accident to create a sham question of liability. The plaintiff asserts State Farm's conduct was motivated by its own financial interests to: (1) avoid the cost of investigation and litigation; (2) collect investment income on funds rightfully belonging to the plaintiff; (3) pressure the plaintiff to settle for less than policy limits; and (4) maintain artificially low reserves. The complaint further alleges State Farm regularly engages in this conduct in circumstances like the plaintiff's in hopes that: (1) a jury will find against the insured; (2) the insured will die before securing a judgment; or (3) the insured will be pressured into settling the UIM claim for less than policy limits. Thus, the complaint alleges intentional, reckless conduct which was outrageous and "so extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized

society." *Standridge*, 565 So. 2d at 44. While the Alabama Supreme Court has not addressed outrage claims arising in the precise context of State Farm's alleged conduct, the tort is not limited to specific categories of conduct. *Potts*, 771 So. 2d 465. Accordingly, the complaint satisfies the first two elements of outrage.

As to the plaintiff's emotional distress, the complaint describes a gravely injured plaintiff enduring prolonged hospitalization, repeated brain surgeries, permanent brain damage, and rapidly mounting medical bills; the plaintiff was physically broken, financially exposed, and emotionally vulnerable. In this state, the complaint alleges State Farm callously denied him access to funds—the proceeds from Smith's liability coverage and his own UIM coverage from State Farm—he sorely needed and to which he was entitled. The undersigned finds these charges are sufficient to allege the plaintiff suffered "emotional distress so severe that no reasonable person could be expected to endure it." *Standridge*, 565 So. 2d at 44; *see Holmes v. Oxford Chemicals, Inc.*, 510 F. Supp. 915, 917–19 (M.D. Ala. 1981), *aff'd sub nom. Holmes v. Oxford Chemicals, a Div. of Consol. Foods Corp.*, 672 F.2d 854 (11th Cir. 1982) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know.").

For the foregoing reasons, the motion to dismiss is due to be denied as to the plaintiff's outrage claim.

## IV. CONCLUSION

For all of the foregoing reasons, the defendant's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. (Doc. 2). Specifically, the motion is **GRANTED** as to the

fraud claim; this claim is **DISMISSED** for failure to state a claim upon which relief can be granted. The motion is **DENIED** as to the remaining claims for breach of contract, bad faith, and outrage.

      **DONE** and **ORDERED** this 27th day of September, 2018.

*/s/ Staci G. Cornelius*
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE