FILED

2021 Dec-23  AM 10:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL VOSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-01465-SGC |
| | ) | |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Presently pending is the motion for summary judgment filed by the defendant, State Farm Mutual Automobile Insurance Company.  (Doc. 73).[2]  The motion has been fully briefed and is ripe for adjudication.  (*See* Docs. 82, 89).  As explained below, the motion is due to be granted in its entirety; the other pending motions are due to be denied as moot.  (Docs. 74, 75; *see* Docs. 78, 79, 87, 88).

## I.    STANDARD OF REVIEW

Under Rule 56(c) of the *Federal Rules of Civil Procedure*, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions

---

[1] The parties consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  (Doc. 10).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id*. at 249.

## II.   FACTS

This lawsuit arises over a dispute regarding a claim for underinsured motorist

("UIM") benefits following a traffic accident in Calhoun County, Alabama.  On the evening of July 30, 2013, Daniel Voss, who was 19 at the time, was riding his bicycle.  (Doc. 73 at 4; *see* Doc. 81-2 at 49).  Immediately prior to the collision, Voss had turned left out of the driveway of a friend, Richard Kotlowski, to travel southbound on Smith Road.  (*See* Doc. 73 at 4; Doc. 82 at 4-5).  Soon after entering the roadway, Voss was struck by a northbound vehicle.  (*See* Doc. 73 at 4; Doc. 82 at 4-5).  The driver of the vehicle was Donna Smith, a non-party to this lawsuit.  (Doc. 73 at 4).[3]  Voss, who was not wearing a helmet, was seriously injured; he was flown to UAB Hospital, underwent multiple brain surgeries, and suffered permanent injuries.  (*See* Doc. 22 at 2-3).

There is a dispute concerning which lane of the road Voss occupied at the moment of impact.  (Doc. 73 at 4; Doc. 82 at 6).  Voss does not remember the collision.  Kotlowski watched Voss turn left out of his driveway, but he did not see the collision itself; he heard the impact and saw Voss airborne, falling back to the ground.  (Doc. 81-17 at 23-26).  Photos of the accident site indicate Smith's vehicle came to a stop in the middle of the road and Voss and his bicycle landed in the southbound lane.  (Doc. 81-23).  Voss contends he was firmly established in the

---

[3] Smith filed a related lawsuit based on the same accident; this court granted the defendants' motions to dismiss in that case, dismissing all of Smith's claims.  *Smith v. Nationwide Mut. Ins. Co.*, No. 17-1373-SGC, 2018 WL 4635740 (N.D. Ala. *dismissed* Aug. 15, 2017) *aff'd* 799 F. App'x 768 (11th Cir. 2020).

southbound lane and that Smith hit him when she crossed the center line.  (Doc. 82 at 4).  State Farm contends Voss's precise location at the moment of impact is not certain.  (Doc. 89 at 2).  For purposes of summary judgment, the court resolves this factual dispute in Voss's favor.  However, the very existence of this dispute bears on the claims at issue in this case.

A law enforcement officer responded to the accident scene and generated an accident report solely based on Smith's statements.  (Doc. 81-2 at 49-51).  The accident report noted the posted speed limit was 25 miles per hour and estimated Smith was traveling at that speed when the accident occurred.  (*Id.* at 49).[4]  The narrative of the crash on the accident report also relies on Smith's statement that Voss failed to yield as he exited the driveway.  (*Id.* at 50).  The accident report lists Kotlowski as a witness.  (*Id.* at 51).

Smith's liability carrier was Nationwide, and she had the statutory minimum liability coverage of $25,000.  (Doc. 73 at 5).  Nationwide subsequently offered Smith's policy limits to Voss to settle his claims against her.  (*Id.*).  Voss was covered by four State Farm automobile polices issued to his parents, together providing $100,000 in UIM coverage.  (*Id.* at 4-5).  Because Voss's medical expenses far-exceeded Smith's liability coverage, Voss's attorney—Brandon Bishop—notified

---

[4] At some point after the accident, the speed limit on this portion of Smith Road was lowered to 20 miles per hour.  (Doc. 81-33 at 2; *see* Doc. 73-8 at 24; Doc. 73-20 at 31, 43).

State Farm of a forthcoming UIM claim on November 20, 2013. (*See id.* at 5; Doc. 82 at 7). Voss also requested that State Farm consent to a settlement between him and Smith for her policy limits, while he proceeded with his UIM claim. (Doc. 73 at 5).

State Farm's analysis of the UIM claim concerned both liability and coverage. (*See* Doc. 89 at 4). Regarding liability, State Farm interpreted the accident report—provided by Bishop—as showing Voss was the negligent party. (*See* Doc. 73 at 5-6; Doc. 82 at 7). Regarding coverage, State Farm questioned Voss's residency at the time of the accident and, thus, whether his parents' policies applied. (*See* Doc. 89 at 4-5). The residency question centered around whether Voss resided with his parents or his grandmother. State Farm assigned Voss's claim to Lamar Gresham, a claim specialist. (Doc. 73 at 5).

On November 27, 2013, Gresham called Kotlowski, who did not answer the telephone or return Gresham's voice message. (Doc. 73 at 6). Gresham again attempted to call Kotlowski on December 3, 2013. (Doc. 81-1 at 59). Gresham's efforts to contact Smith were also unsuccessful; it does not appear she responded to Gresham's November 27, 2013 certified letter or returned his December 3, 2013 telephone call. (*See id.* at 59, 61). On December 4, 2013, Gresham assigned Don Young to inspect and photograph the accident scene, as well as secure recorded statements from Kotlowski and Smith. (*Id.* at 57).

Less than two hours later, Young entered a claim note indicating he had completed his tasks. (Doc. 81-1 at 57). Young took photos of the accident scene, and opined that Voss should have been able to see Smith's vehicle approaching prior to the crash. (*Id.*). Young was unable to speak with Kotlowski, who was not at home. (*Id.*). Young did speak with two neighbors: Chuck Cole and an unnamed individual three doors down. (*Id.*). Cole told Young he did not witness the accident but gave details about Voss's residency. (*Id.*). The unnamed neighbor told Young his son witnessed the accident and said he would call Young at some point in the future. (*Id.*). It does not appear anyone from State Farm ever spoke to this unnamed witness. Regarding Smith, Young's claim note does not mention any attempt to contact her or secure a recorded statement. (*Id.*). Young's other investigative tasks—interviewing and/or attempting to interview Voss's parents and grandmother—were aimed at determining Voss's residency for purposes of coverage. (*See* Doc. 73 at 6-7; Doc. 82 at 9; Doc. 89 at 4).

State Farm's claim file indicates the primary focus of its investigation concerned the coverage issue arising from Voss's residency. (Doc. 81-1 at 49-64). In late 2013 or early 2014, State Farm retained an attorney, Charile Gaines, to assess the coverage question by conducting examinations under oath ("EUOs") of Voss and his parents. (*Id.* at 48-49; *see* Doc. 81-10 at 12). The majority of Gresham's January 8, 2014 engagement letter to Gaines consisted of facts related to determining Voss's

residency. (Doc. 81-6 at 7). However, Gresham's letter went on to state that, once Voss's residency was determined, State Farm needed "to resolve any contributory negligence on the part of the plaintiff." (*Id.*). The letter summarized State Farm's position that Voss failed to yield the right of way to Smith. (*Id.*). Accordingly, State Farm tasked Gaines with assisting in resolving questions of both residency and liability. (*Id.*).

On January 27, 2014, Gaines conducted EUOs of Voss and his parents. (Doc. 81-6 at 25; *see* Doc. 81-1 at 48). Following the EUOs, Gaines opined that Voss's primary residence was his parents' house but that he was temporarily living with his grandmother at the time of the accident. (Doc. 81-6 at 28; *see* Doc. 81-1 at 48). Based on Gaines's opinion, State Farm resolved the coverage question in favor of Voss. (Doc. 81-1 at 47). However, the claim file reflects State Farm maintained there were questions regarding Smith's liability and Voss's contributory negligence. (*Id.* at 46-47). Here, the parties here dispute the factual basis behind State Farm's liability determination, as discussed in more detail below. (*See* Doc. 82 at 10-12; Doc. 89 at 5-7). In any event, on February 6, 2014, Gaines responded to Bishop's request to consent to a settlement between Voss and Smith for her Nationwide policy limits, stating State Farm had instead decided to front the $25,000. (Doc. 73-20 at 25).

In response to Gaines's February 6, 2014 letter—which did not include any

explanation of State Farm's decision to front Smith's policy limits—Bishop wrote Gaines asking that State Farm reconsider. (Doc. 81-6 at 33-34). Bishop noted Voss had no interest in collecting against Smith personally and that State Farm's consent to settlement would allow Voss to resolve those claims without subjecting Smith to trial and the possibility of an excess verdict. (*Id.* at 33). The letter noted State Farm would be free to dispute Voss's UIM claims after consenting to the settlement with Smith. (*Id.*). Alternatively, Bishop proposed State Farm simply pay its $100,000 policy limits or negotiate a settlement of the UIM claim. (*Id.* at 34). This request was based on Voss's medical bills, which exceeded all available insurance, and which Bishop suggested should be "weighed against the likelihood of prevailing on a liability defense." (*Id.*).

Gaines responded on February 18, 2014, stating in relevant part that State Farm chose to front Smith's policy limits due to questions regarding Smith's liability and Voss's contributory negligence. (Doc. 81-6 at 48). Gaines's February 18, 2014 letter invited Bishop to provide any evidence showing Smith's liability and/or Voss's lack of contributory negligence. (*Id.*).[5] Bishop's reply noted Voss was "not asking State Farm to totally ignore" liability. (*Id.* at 50). Bishop's letter—which did not attach any evidence—contended Smith was speeding, reasoning a car

---

[5] In subsequent letters Gaines again invited Bishop to provide any additional evidence regarding liability. (Doc. 81-6 at 61, 66, 99).

traveling at 25 miles per hour "should be able to stop on a dime." (*Id.*).  Without pointing to specific evidence, Bishop's reply also claimed "physical evidence at the scene [was] not consistent with a 25 mph impact." (*Id.*).  The reply also pointed to Nationwide's swift offer of Smith's policy limits as evidence of her liability.  (*Id.*).  State Farm maintained its position and on April 9, 2014, sent a check for the $25,000 in fronted funds to be held in trust pending resolution of Voss's claims against Smith.  (*See* Doc. 73 at 10).

Following State Farm's decision to front Smith's liability limits, Bishop filed a lawsuit on Voss's behalf against Smith in state court.  *Voss v. Smith*, No. 2014-900224 (Calhoun Cty. Cir. Ct. *filed* April 23, 2014) (*see* Doc. 14-1 at 1-6).  The state court complaint did not name State Farm, and State Farm did not intervene.  (Doc. 73 at 10).  Instead, State Farm relied on Gaines to monitor Voss's lawsuit against Smith.  (*See id.*; Doc. 82 at 13-14).  Billing records show Gaines reviewed the parties' initial pleadings and interrogatory responses and that his assistant reviewed online court records monthly for any developments prior to trial.  (Doc. 81-2 at 163-71, 175-80, 182-90).  Billing records also show Gaines spoke with Smith's defense attorney twice—on January 13, 2015, and July 14, 2016—for a total of 0.4 hours and corresponded with her on several occasions prior to trial, requesting updates on any significant developments.  (*Id.* at 166, 182, 185, 187).

Gaines also periodically updated State Farm regarding the progress of Voss's lawsuit against Smith. (Doc. 81-2 at 157, 173). When Gaines notified State Farm that Voss had filed suit, he described the complaint's principal allegation of liability—that Smith was speeding. (Doc. 81-6 at 101). Gaines's letter to State Farm reported Voss had never presented evidence showing Smith was speeding; it also noted the accident report as stating Smith was traveling the speed limit. (*Id.* at 101). When Smith answered, Gaines forwarded a copy of the pleading to State Farm. (*Id.* at 108). Contemporaneously, Gaines wrote to Smith's defense attorney noting Voss's UIM claim, State Farm's position that Smith was not liable, and the lack of evidence showing Smith was speeding. (*Id.* at 105). Gaines's letter asked Smith's lawyer to inform him if discovery yielded evidence supporting the complaint's allegations. (*Id.*). A subsequent letter to Smith's lawyer again requested any information which would change State Farm's evaluation of the liability issue. (*Id.* at 120).

Following Smith's answer there was very little activity in Voss's case for over a year. In a November 13, 2014 update to State Farm, Gaines reported the lack of activity and the fact that party depositions had not been scheduled. (Doc. 81-6 at 116). In a January 12, 2015 report to State Farm, Gaines again noted the lack of activity and that depositions had not been scheduled. (*Id.* at 122-24). Gaines again relayed the lack of activity in Voss's case in emails to State Farm adjusters on

September 4, 2015, and January 19, 2016. (*Id.* at 129, 131). In a May 23, 2016 letter to State Farm, Gaines advised the trial court had set Voss's case for trial on September 16, 2016, and expressed his opinion that the setting would get the parties moving, as they had "done virtually nothing" to that point. (*Id.* at 133). In a July 15, 2016 letter to State Farm, Gaines advised that Smith's attorney related there were no significant developments in the case and that liability was still "sharply disputed." (*Id.* at 135). Gaines's August 1, 2016 pretrial report to State Farm again noted the lack of substantial activity in the case and the liability dispute. (*Id.* at 138-39). The report noted Smith's and Voss's inconsistent narratives regarding the events leading up to the accident; Smith maintained that Voss pulled out in front of her, failing to yield the right of way, while Voss contended Smith was speeding. (*Id.*).

On hearing the conflicting narratives at trial, the jury believed Voss's version of events; it awarded him $1.9 million in damages. (*See* Doc. 82 at 4). Following the verdict, State Farm tendered the remainder of its $75,000 in UIM coverage to Voss; Nationwide also tendered its $25,000 in liability limits on behalf of Smith. (Doc. 73 at 12). These proceeds, together with the $25,000 State Farm fronted, remain in Bishop's trust account. (*Id.*). Taking the insurance proceeds into account, Voss is left with a $1,775,000 excess judgment against Smith, excluding interest. Voss has not attempted to collect any amount from Smith, who appears to be judgment-proof. (Doc. 82 at 15). Voss agreed to stay any collection efforts while

Smith pursued her related lawsuit against State Farm and Nationwide but has not waived any right to collect from her in the future. (*Id.*).

## III.   PROCEDURAL HISTORY

Voss filed the instant lawsuit against State Farm in state court, asserting claims for breach of contract, bad faith, fraud, and outrage. (Doc. 1-1 at 5-38). State Farm removed to this court on the basis of diversity jurisdiction and then moved to dismiss all claims under Rule 12(b)(6). (Docs. 1-2). This court granted State Farm's motion with regard to the fraud claim but denied it in all other respects. (Doc. 22). After a protracted discovery period, State Farm filed the instant motion for summary judgment regarding Voss's remaining claims. (Doc. 73). Also pending are the parties' respective motions to exclude testimony from each other's experts: Thomas Woodall for State Farm and Ivey Gilmore for Voss. (Docs. 74, 75; *see* Docs. 78, 79, 87, 88).[6] In light of the undisputed facts and the following discussion, it is not necessary to address the arguments concerning expert testimony.

## IV.   DISCUSSION

Because the substantive legal issues presented on summary judgment are largely the same as those presented in State Farm's motion to dismiss, the following

---

[6] Incorporated into State Farm's reply in support of its motion to strike Gilmore's testimony is a motion to strike Voss's response for exceeding page limitations. (Doc. 88). The court construed the motion to strike as objections. (Doc. 90). Based on the following discussion, it is unnecessary to address State Farm's objections.

introductory discussion covers some ground already addressed at the Rule 12(b)(6) stage.  Under Alabama's uninsured motorist statute, in order for an insured to be entitled to UIM benefits, the insured must be "legally entitled to recover" from the owner or driver of the underinsured vehicle. ALA. CODE § 32-7-23.[7]  The Alabama Supreme Court has recognized the conflicting rights of UIM insureds and their insurers when handling UIM claims. *Lowe v. Nationwide Ins. Co.,* 521 So. 2d 1309 (Ala. 1988).  Under *Lowe*, when an insured sues a tortfeasor and also seeks UIM benefits, the insured may either join the UIM insurer as a party or simply notify the UIM insurer of the lawsuit against the tortfeasor and the possibility of a UIM claim following the trial. *Id.* at 1310.  Where the insured names the UIM insurer in the lawsuit, the UIM insurer has the option to participate in the litigation or opt-out—choosing not to participate in the trial. *Id.*  Where the insured does not name the UIM insurer in the lawsuit, the insurer can choose to intervene or stay out of the case. *Id.*  Under any of these scenarios, the UIM insurer is bound by the liability and damages determinations at trial. *Id.*  As the Alabama Supreme Court recently has noted, "*Lowe* itself demonstrates that there is a strong policy in Alabama against tainting a jury with knowledge of the possible availability of insurance to cover a

---

[7] The State Farm policies at issue here mirrored this statutory language, requiring the insured to show he is "legally entitled to recover" damages from a tortfeasor.  (Doc. 73-22 at 7).

party's damages." *Ex parte Allstate Prop. & Cas. Ins. Co.*, 300 So. 3d 1124, 1126 (Ala. 2020).

After issuing *Lowe*, the Alabama Supreme Court addressed the conflict between a UIM insurer's subrogation rights against the tortfeasor and the UIM insured's right to settle with the tortfeasor. The court held an insured cannot settle a claim against a tortfeasor absent the consent of the UIM insurer. *Lambert v. State Farm Mut. Auto. Ins. Co.*, 576 So. 2d 160, 167 (Ala. 1991). The court also provided the following "general rules" regarding the procedure to be followed by UIM insureds and insurers, noting "any procedure must take into consideration the facts and circumstances of each individual case." *Id.*

> (1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.

> (2) If the tort-feasor's liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor, and if the settlement would release the tort-feasor from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.

> (3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor, or will deny any obligation to pay underinsured motorist

benefits. If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.

(4) The insured should not settle with the tort-feasor without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.

(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor or the tortfeasor's insurer.

(6) If the underinsured motorist insurance carrier wants to protect its subrogation rights, it must, within a reasonable time, and, in any event before the tort-feasor is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's settlement offer.

*Id. Lambert* noted these guidelines were designed to protect the UIM insurer in two ways: (1) protecting its subrogation rights against the tortfeasor; and (2) guarding against possible collusion between the UIM insured and tortfeasor at the UIM insurer's expense. *Id.*

Having set out the law generally governing UIM claims, the court turns to the specific claims remaining in this case.

### A.   Breach of Contract

In its motion for summary judgment, State Farm contends it complied with

the terms of its policies and Alabama law.  (Doc. 73 at 14-19).  State Farm asserts the polices required Voss to show legal entitlement to recovery against Smith and that the duty to pay Voss's claim only arose where State Farm agreed with Voss's showing.  Because State Farm did not agree Smith was liable and because Voss did not produce substantial evidence of Smith's liability, State Farm contends it properly refused to pay his UIM claim until Smith's liability was fixed by the judgment in the underlying case.  (*Id.* at 15-18).[8]  State Farm notes that, once Smith's liability was fixed by the judgment, it promptly paid its remaining UIM limits to Voss.  (*Id.* at 19).

Voss claims State Farm breached its insurance contracts in two ways: (1) withholding consent to settlement with Smith in order to avoid litigation costs; and (2) failing to conduct a good faith investigation into the question of liability.  (Doc. 82 at 26-27).  These arguments are addressed in reverse order.

### 1.    State Farm's Investigation

At the motion to dismiss phase, the facts concerning State Farm's investigation of the accident were derived from the allegations in the complaint. (Doc. 22).  The complaint alleges Smith was speeding and talking on her cellphone[9]

---

[8] State Farm also contends Voss cannot show contract damages.  (Doc. 73 at 18).  In light of the following discussion, it is not necessary to address this argument.

[9] The allegation that Smith was on her cell phone at the time of the accident did not appear in the state court lawsuit or in Bishop's pre-suit correspondence with Gaines.  (Doc. 14-1 at 1-6; Doc. 81-6 at 33-34, 50).  The basis of Smith's liability in those documents concerned only her speed.

when the accident occurred.  (Doc. 1-1 at 24-25).  The complaint further asserts: (1) State Farm's only investigation into the claim consisted of an EUO of the plaintiff and his parents concerning the coverage question; and (2) a good faith investigation would have revealed Smith's clear fault and Voss's lack of contributory negligence. On those facts, the court denied State Farm's motion to dismiss Voss's breach of contract claim.  (Doc. 22).  If discovery had borne out those assertions, the remaining claims in this matter would be set for trial.  However, resolution of the instant motion under Rule 56 benefits from facts gleaned during discovery, and the relevant facts are not constrained to the complaint itself.

Contrary to the allegations in the complaint, the undisputed facts show State Farm's investigation went beyond the coverage question.  While it appears the bulk of the investigation focused on issues related to coverage, the record shows Gresham reviewed the accident report (provided by Bishop), called Kotlowski twice, called Smith once, and sent Smith a letter.  When neither Smith nor Kotlowski responded to Gresham, he assigned Young to inspect the accident scene and secure recorded statements from Kotlowski and Smith.  Young did photograph the accident scene and attempted to speak with Kotlowski, who was not at home.  It does not appear

---

(*Id.*).  In opposition to the instant motion, Voss states—contradictorily—that Smith "was on her cell phone at the time of the accident" or "may have been using her phone at the time of the collision." (Doc. 82 at 5).  It does not appear Voss presented this allegation to State Farm to show Smith's liability in his pre-suit claim for UIM benefits.

Young attempted to speak with Smith.  Young also spoke with two neighbors: Chuck Cole and an unnamed individual several doors away from the accident scene.  Cole did not witness the accident.  The unnamed neighbor told Young his son witnessed the accident and would call Young in the future.  Apparently, the unnamed witness never called Young, and State Farm did not make further efforts to speak with him.

The foregoing inspection of the accident scene and attempts to speak with witnesses constituted the entirety of State Farm's independent investigation into liability.  It was not an exhaustive investigation, and State Farm's attempts to speak with Smith and/or Kotlowski—the only two individuals identified as witnesses on the accident report—were unsuccessful.  The failure to speak with these witnesses, as well as the unnamed witness identified during Young's site investigation, are the most apparent weaknesses in State Farm's investigation.   While State Farm attempted to contact Kotlowski three times, it only made two such attempts regarding Smith; it apparently made no further attempt to reach the unnamed witness beyond Young's initial conversation with his father.  Young's inspection of the accident scene did yield one important finding regarding liability: the unobstructed view of the road from Kotlowski's driveway.  Young concluded Voss should have been able to see Smith approaching from the left if he had looked before entering the roadway.  Young's photographs of the accident scene support this conclusion. (Doc. 73-24 at 225-26; Doc. 73-25 at 2-4; *see also* Doc. 81-23 at 7-18).

Underlying State Farm's independent investigation was the accident report Bishop provided.  Both sides contend the accident report supports their respective positions.  State Farm takes the accident report's conclusion—that Voss was at-fault for failing to yield the right-of-way—at face value.  (Doc. 73 at 4-6; Doc. 89 at 2).  Voss contends the accident report shows he "was lawfully in his lane of travel at the time Smith swerved into his lane of travel and stuck him."  (Doc. 82 at 4).  The report's diagram of the accident scene speaks for itself.  The only definitive conclusions to be drawn from the diagram are that: (1) Voss and his bicycle came to rest in the southbound lane; and (2) Smith's vehicle came to rest straddling the middle of Smith Road, located more in the southbound lane than the northbound lane.  (Doc. 81-2 at 50).  Regarding the events leading up to the moment of impact, the diagram is wholly ambiguous.  It shows Smith approaching while located entirely in the northbound lane and the impact occurring immediately after Voss entered the road from Kotlowski's driveway.  (*Id.*).  The diagram shows Voss's bicycle at impact just past the middle of the road into the southbound lane, and depicts Smith's car over the centerline, with the front driver's side of her vehicle encroaching into the southbound lane when she hit Voss.  (*Id.*).

For purposes of summary judgment, the ambiguity in the accident report is resolved in Voss's favor.  Accordingly, the court assumes Voss was firmly established in the southbound lane when Smith crossed the center line and hit him.

However, the accident report reasonably can be interpreted to show Voss entered the roadway just before Smith passed and that she swerved in an attempt to avoid a collision; this interpretation would also conform with the ultimate conclusion expressed on the report—that Voss failed to yield the right-of-way, causing the collision. (Doc. 81-2 at 50). The fact that Voss had an unobstructed view looking south as he exited Kotlowski's driveway reasonably supports State Farm's interpretation.

When Voss made a claim under the UIM policies, State Farm had a duty to conduct a good faith investigation into the merits of the claim within a reasonable time. *Lambert*, 576 So. 2d at 167; *see LeFevre v. Westberry*, 590 So. 2d 154, 161 (Ala. 1991) ("When a claim is filed by its insured, the uninsured motorist carrier has an obligation to diligently investigate the facts, fairly evaluate the claim, and act promptly and reasonably."). Under Alabama law, a UIM insurer is not liable for bad faith or breach of contract before liability and damages are fixed. *Pontius v. State Farm Mut. Auto. Ins. Co.*, 915 So. 2d 557, 564 (Ala. 2005) ("Without a determination of whether liability exists on the part of the underinsured motorist and the extent of the plaintiff's damages, a claim of . . . breach of contract is premature."); *see LeFevre*, 590 So. 2d at 158. The polies here provided coverage for injuries sustained by Voss if he was "legally entitled to recover" from Smith. (Doc. 73-22 at 7). This prerequisite to entitlement to UIM insurance proceeds conforms with

Alabama law.  *See Quick v. State Farm Mut. Auto. Ins. Co.*, 429 So. 2d 1033, 1035 (Ala. 1983).

Additionally, the policies provide State Farm had to agree as to liability and the amount of damages; they state explicitly that State Farm could contest both liability and damages.  (Doc. 73-22 at 8).[10]  Of course, a plaintiff is not always required to obtain a judgment in order to fix liability.  *Pontius*, 915 So. 2d at 564.  However, as aptly described in an opinion issued by a court sitting in the Middle District, Alabama courts' quixotic interpretation of the state's UIM statute allows a UIM insurer wide discretion in deciding whether its insured has established legal entitlement to recovery.  *Broadway v. State Farm Mut. Auto. Ins. Co.*, 364 F. Supp. 3d 1329, 1336 (M.D. Ala. 2019).[11]  Moreover, Alabama courts' imposition of this prerequisite to suit for both bad faith and breach of contract claims further complicates the already unwieldy scheme.  *See id.* at 1336-37 ("to even be heard on a contract claim, the insured must present enough evidence to satisfy the insurance company of the amount of damages, which may then assert its own interpretation of the evidence. And if the insurance company can find a good reason to contest what

---

[10] Because Voss's damages dwarfed his coverage limits at the time he made his UIM claim, the only relevant inquiry here concerns liability.

[11] The question in *Broadway* concerned the amount of damages—not liability—claimed by a State Farm UIM insured.  However, because Alabama courts require a UIM insured to establish legal entitlement to recovery as to both liability and damages, the reasoning expressed in *Broadway* is no less persuasive in this case, which concerns liability only.

the insured claims, it can keep the insured out of court.").

In *Broadway*, after surveying the relevant Alabama Supreme Court decisions, the court persuasively summarized Alabama law as requiring an insured to present the insurer with substantial evidence of liability and damages—with which the claims adjuster must agree—in order to show legal entitlement to recovery. *Id.* at 1339; *see Ex parte Safeway Ins. Co. of Ala., Inc.*, 148 So. 3d 39, 43 (Ala. 2013) (UIM insured must "present[ ] substantial evidence to survive a motion for summary judgment or a judgment as a matter of law and the fact finder [must be] reasonably satisfied from the evidence that the motorist should recover damages"); *Joffrion v. Allstate Ins. Co.*, No. 12-0434, 2014 WL 3518079, at *4 (S.D. Ala. July 16, 2014) (insured must present insurer with substantial evidence that full amount of damages claimed was caused by the accident).

The undersigned shares the *Broadway* court's unease with Alabama courts' interpretation of the state's UIM statute; however, this *Erie*-bound court is required to decide this case as an Alabama court would.  Under Alabama law, Voss cannot maintain a breach of contract claim regarding State Farm's investigation or failure to pay his UIM claim prior to fixing liability.  Under the undisputed facts of this case, liability was not fixed until Voss received the verdict against Smith.  Rather than providing State Farm with substantial evidence of Smith's liability, Voss provided virtually no evidence; Bishop provided State Farm with a copy of the

accident report and alleged, without pointing to specific evidence, that Smith was speeding.[12]   Meanwhile, State Farm interpreted the accident report—the only documentation Voss provided as to liability—as showing Smith was not liable and Voss was contributorily negligent.  State Farm's interpretation of the accident report was not unreasonable, particularly in light of Voss's unobstructed view of the road from Kotlowski's driveway.

Voss's opposition repeatedly attacks State Farm's reliance on the accident report because it would be inadmissible hearsay regarding liability at trial.  There are multiple problems with this argument.  First, it is apparent that Voss—through Bishop—thought the accident report was sufficiently probative that he provided a copy to State Farm when he made his UIM claim.  Next, while the accident report might be inadmissible at trial, Voss does not point to any authority holding an insurer cannot consider it in determining whether to pay a claim under its policies.  *See Weaver v. Allstate Ins. Co.*, 574 So. 2d 771, 774 (Ala. 1990) (conflicts between insureds statements and accident report created triable issue regarding liability); *see*

---

[12] Indeed, Bishop's correspondence with Gaines appears to concede there was some question of liability.  (Doc. 81-6 at 34) (Bishop's response to Gaines's February 6, 2014 letter asked State Farm to reconsider its decision to front in light of Voss's medical bills, which Bishop suggested should be "weighed against the likelihood of prevailing on a liability defense"); (*id.* at 50) (Bishop's reply to Gaines's February 18, 2014 letter stated Voss was "not asking State Farm to totally ignore" liability but to consider it in light of Voss's damages).

*also Jenkins v. State Farm Mut. Auto. Ins. Co.*, 30 So. 3d 414, 417 (Ala. Civ. App. 2008) (plaintiff relied on accident report to support entitlement to UIM benefits).[13]

It is true State Farm conducted a less-than-vigorous independent investigation of the accident, particularly in its attempts to speak with witnesses. However, the accident report and Young's inspection of the accident site gave State Farm a reasonable basis under Alabama law on which to contest Smith's liability and Voss's contributory negligence. *See Broadway*, 364 F. Supp. 3d at 1339–40 (although Alabama courts give "lip-service to the principle that the insurer's dispute must be reasonable, it is impotent in practice. Alabama appellate courts give little scrutiny to the insurer's proffered reason for disputing the claim."). Voss has not presented any cases asserting breach of a UIM contract in which an Alabama appellate court scrutinized an insurer's reasons for disputing liability and found them to be illegitimate.

Voss's failure to present State Farm with evidence supporting Voss's legal entitlement to recovery persisted through trial. After filing suit against Smith, Voss did not communicate with Gaines until after the state court's judgment against Smith, at which point State Farm promptly tendered its limits. While Gaines did not devote substantial time to monitoring the state court lawsuit, the undisputed facts

---

[13] The admissibility of the accident report is not before this court. This opinion relies on the accident report, not to prove the truth of its conclusion that Voss was at fault, but to show a basis of the dispute regarding liability.

demonstrate there simply was not much activity to monitor.  After Smith's answer, there was little action until the case was set for trial.  And up until judgment was entered, Smith's counsel consistently advised Gaines that liability was contested. Because Voss did not satisfy State Farm he was legally entitled to recovery from Smith, liability was not fixed until the jury returned its verdict in Voss's favor.  *See Pontius*, 915 So.2d at 564; *Ex parte State Farm Mut. Auto. Ins. Co.*, 893 So. 2d 1111, 1115 (Ala. 2004).

### 2.    State Farm's Refusal to Consent to Settlement

The policies here included "consent-to-settle" clauses requiring Voss, prior to settling any claims against an underinsured tortfeasor, to notify State Farm of the proposed settlement and obtain State Farm's consent.  (Doc. 73-22 at 7-8).  The policies provided State Farm could decline consent to a tortfeasor's proposed settlement and front the amount of the settlement "in order to protect [its] right of subrogation" against the tortfeasor.  (*Id.* at 8).  These provisions comply with the procedure laid out in *Lambert*, 576 So. 2d at 167.

Voss contends State Farm refused to consent to settlement and fronted Smith's liability limits, not to protect its subrogation interests, but instead as pretext to avoid the costs of litigation.  (Doc. 82 at 28-31).  Voss points to evidence that State Farm does not typically evaluate subrogation potential or pursue subrogation against tortfeasors where it declines consent to its UIM insureds' settlements and instead

fronts tortfeasors' liability limits. (*Id.* at 29). Moreover, Voss notes State Farm did not open a subrogation claim file in this case. (*Id.*). Finally, Voss points to correspondence from Gaines and a claim note from an adjuster as evidence of State Farm's abuse of the fronting process. (*Id.* at 29-30).

As an initial matter, Voss's reliance on State Farm's failure to pursue subrogation, either in this case or more generally, fails. *Lambert* protects the right of subrogation; it does not require an insurer to take steps to enforce that right. *Lambert*, 576 So. 2d at 167; *see generally Ex parte Allstate*, 237 So. 3d 199 (Ala. 2017). As to the adjuster's statement, Voss points to a claim note in which an adjuster—assigned to the file two years after State Farm's decision to withhold consent to settlement and front Smith's limits— stated: "This was the case we fronted the $25K which forced Nationwide to try the case instead of us." (Doc. 82 at 30; *see* Doc. 89 at 17). As State Farm notes, the adjuster's statement speaks to the consequences of State Farm's decision—not its motivation. (*See* Doc. 89 at 17). Moreover, the claim notes created contemporaneously with the decision to front Smith's limits indicate State Farm was motivated by a wish to protect its subrogation interests. (Doc. 73-23 at 85, 86, 88). Accordingly, the adjuster's note does not show State Farm's refusal to consent to settlement constituted an abuse of the fronting process.

As to Gaines, Voss points to a June 12, 2014 letter to Smith's counsel in which Gaines described State Farm's decision to front: "I advised Brandon [Bishop] that the liability issue cannot be ignored as we are not aware of any facts that render Ms. Smith liable.  That is why State Farm chose to front the money."  (Doc. 81-6 at 105). Voss contends this shows State Farm chose to front Smith's limits, not to protect its subrogation rights under *Lambert*, but to force Nationwide to bear the cost of litigation.  (Doc. 82 at 30).  The problem with Voss's reliance on Gaines's statement goes back to *Lowe*, which established Alabama's opt-out procedure; *Lambert* came later and addressed the procedure to follow when a UIM insured is offered a settlement with a tortfeasor.  *Lowe* was premised on Alabama's public policy against informing juries of the presence of insurance coverage.  *Lowe*, 521 So. 2d at 1309-10; *see Ex parte Allstate*, 300 So. 3d at 1126.  The confounding *Lambert* fronting procedure would not be necessary but for Alabama's public policy against divulging insurance coverage to juries, as expressed in *Lowe*.  And it is difficult to imagine how State Farm could insist on fixing liability in this case without revealing the presence of insurance if it had consented to Smith's settlement, releasing her from the state court case.

While the parties have not cited—and the undersigned has not found—an Alabama Supreme Court case addressing the precise question presented here, it appears it would approve of State Farm's insistence that Smith remain a defendant

to contest liability. *Ex parte Allstate*, 300 So. 3d at 1126 (to protect against injection of insurance coverage, an insurer "can insist that a jury determine liability and damages and, at the same time, keep its involvement from the jury pursuant to the opt-out procedure adopted in *Lowe*"); *see Ex parte Morgan*, 13 So. 3d 385, 390 (Ala. 2009) (insurer properly withheld consent to settlement where UIM claim was accompanied by materials that "raised issues *as to liability*, the amount of damages, and causation") (emphasis added). Accordingly, even if Gaines's letter established that State Farm chose to front due to questions of liability, this would not run afoul of Alabama law.[14]

For the foregoing reasons, State Farm's decision to withhold consent and front Smith's limits was permissible under the Alabama Supreme Court's interpretation of Alabama law. This court is bound by that interpretation.

### B.    <u>Remaining Claims and Motions</u>

The conclusion that State Farm is entitled to judgment as a matter of law as to breach of contract is fatal to Voss's remaining claims. Indeed, a plaintiff claiming bad faith must show breach of an insurance contract as an element of the claim. *State Farm Fire and Cas. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2013). Likewise,

---

[14] Voss frames State Farm's refusal to consent to Smith's settlement based on contested liability as its effort to avoid litigation costs. As with the adjuster's claim note, the avoidance of litigation costs is a consequence of the *Lambert* fronting procedure. State Farm's motivation, as stated in Gaines's letter, was to force Voss to fix liability through trial. This is permissible under Alabama law.

because State Farm did not breach its insurance contracts or abuse the *Lambert* fronting procedure, its conduct cannot be categorized as "intentional or reckless" and "extreme and outrageous," both of which are required to sustain a claim for outrage. *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). Again, while the complaint alleged facts which satisfied the Rule 12(b)(6) standard, discovery did not bear out those allegations. Accordingly, State Farm is entitled to judgment as a matter of law on Voss's remaining claims.

Finally, in light of the foregoing, it is not necessary to address the parties' motions to exclude their respective experts' testimony, or State Farm's incorporated objections. (Docs. 74, 75; *see* Doc. 88). These motions are moot.

## V.    CONCLUSION

For all of the foregoing reasons, there are no genuine issues of material fact, and State Farm is entitled to judgment as a matter of law on all remaining claims. State Farm's motion for summary judgment will be granted, and the remaining motions will be termed as moot. A separate order will be entered.

**DONE** this 23rd day of December, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE